UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| JERRY ALEXANDER, *et al.*, | Case No. 3:16-cv-00572-MMD-CLB |
|---|---|
| Plaintiffs, | ORDER |
| v. | |
| DEAN MEILING, *et al.*, | |
| Defendants. | |

**I.   SUMMARY**

Investors of Metalast International, LLC ("Metalast") initiated this putative class action against other investors and their alleged co-conspirators for purportedly engaging in a fraudulent scheme to control Metalast. (ECF No. 1 at 10-11.) Before the Court are three motions: (1) a Special Motion to Dismiss Under NRS § 41.660 and for Attorneys' Fees (the "Anti-SLAPP Motion") (ECF No. 137) filed by Defendants Dean Meiling, Madylon Meiling, Chemeon Surface Technology, LLC, Metalst Surface Technology, LLC, D&M-MI, LLC, DSM Partners, LP, and Meiling Family Partners, Ltd. (collectively the "Meilings"); (2) the Meilings' Renewed Motion to Dismiss (ECF No. 134); and (3) Defendant Janet Chubb's ("Chubb") Motion to Dismiss (ECF No. 140).[1] Because the Court agrees with Defendants that the litigation privilege bars Plaintiffs' claims—and as further explained

---

[1] Chubb also joined the Meilings' motion to dismiss (ECF No. 138 (joinder to ECF No. 134)) and Anti-SLAPP Motion (ECF No. 139 (joinder to ECF No. 137)). Although Defendants James Proctor ("Proctor") and Meridian Advantage ("Meridian") have not joined in the motions, the Court will extend its ruling on all motions to Proctor and Meridian because the claims against all Defendants are essentially the same. *See Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) (holding district court may *sua sponte* grant motion to dismiss as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants).

*infra*—the Court will grant both motions to dismiss (individually "MTD" and collectively "MTDs") and deny the Anti-SLAPP Motion.[2]

## II. BACKGROUND

The following facts are adapted from the Complaint (ECF No. 1) unless otherwise indicated.

Plaintiffs are part of a group of over 900 investors who made an initial capital investment of over $90,000,000 in Metalast. (*Id.* at 9-10.) Metalast later acquired more capital and loans from an array of sources, including the Meilings. (*Id.* at 4-5, 10.)

Defendants later conspired to use the Meilings' capital contribution and loans to Metalast to fraudulently acquire its assets. (*Id.* at 10.) As part of this scheme, Defendants misrepresented that the Meilings would provide Metalast with more funding, but they never did, causing Metalast to stop seeking funding from other sources. (*Id.* at 10-11, 15-17.) As part of the feigned negotiation, Defendants obtained access to Metalast's confidential and proprietary information, and later used the information to file a receivership action against Metalast to take over its assets (*Id.* at 10-11.) In fact, "[D]efendants were planning to file a state court receivership action" when they feigned negotiations, and Dean Meiling was using the negotiation to "obtain[] further fodder to use in support of the receivership action." (ECF No. 45 at 3-4.)[3] During negotiations, Defendants also misrepresented that the Meilings' legal counsel was Chubb and their accountant was Proctor. (ECF No. 1 at 10-11, 15-17.) These misrepresentations occurred in two meetings sometime in March and April 2013. (*See* ECF No. 145 at 5; ECF No. 146 at 4.)

On April 16, 2013, Chubb helped the Meilings petition the Nevada state court (the "State Court") for appointment of Proctor and his employer Meridian as receiver for Metalast. (*Id.* at 11, 20.) The State Court granted the Meilings' petition and initiated a

---

[2]The Court has also reviewed the parties related briefs (ECF Nos. 135, 145, 146, 147, 148, 152, 153, 154)

[3]Defendants previously filed a first set of MTDs. (ECF Nos. 28, 31, 34.) The Court denied these motions as moot with leave to refile after the Court imposed a stay in this case, pending a state court decision in a related case. (ECF No. 100.)

receivership action (the "Receivership Action"). (*Id.*) During the Receivership Action, Proctor removed and prevented Metalast's managing member from contacting Metalast's members, which further prevented the members from timely participating or protecting their interests in the Receivership Action. (*Id.* at 11.) Moreover, Proctor improperly appointed Dean and Madylon Meiling to take over Metalast's operations for the purpose of devaluing Metalast and to misrepresent that the company could no longer continue. (*Id.*) In the Receivership Action, Defendants also misrepresented Metalast's financial affairs and Proctor's status as an independent party. (*Id.* at 11, 16.) The alleged fraudulent scheme culminated with a transfer and conversion of a majority of Metalast's assets to Defendants (*id.* at 11, 17).

Plaintiffs assert claims against the Meilings for: (1) breach of contract, (2) breach of the duty of good faith and fair dealing, and (3) tortious breach of the duty of good faith and fair dealing, (4) unjust enrichment, and (5) conversion. (*Id.* at 11-14, 21-22.) Additionally, Plaintiffs assert claims against all Defendants for: (1) civil conspiracy, (2) fraud, and (3) negligent misrepresentation. (*Id.* at 14-18.) Finally, Plaintiffs assert the following claims: (1) breach of fiduciary duty against the Meilings and Proctor; (2) professional negligence against Proctor and Meridian; and (3) respondeat superior against Meridian for Proctor's conduct. (*Id.* at 18-21, 23.)

### III.   ANTI-SLAPP MOTION

Defendants assert that Plaintiffs' action is a strategic lawsuit against public participation ("SLAPP"), which seeks to collaterally attack Defendants' participation in the Receivership Action. (ECF No. 137 at 6.) The Court will address the Anti-SLAPP Motion first. Because the Court will deny that motion, the Court will then address the MTDs.

Under NRS § 41.650, "[a] person who engages in a good faith communication in furtherance of the right to petition . . . in direct connection with an issue of public concern is immune from civil liability for claims based upon the communication." "[T]he purpose of Nevada's anti-SLAPP statute is . . . [to] protect[] well-meaning citizens who petition the government and then find themselves hit with retaliatory suits known as SLAPP suits."

*John v. Douglas County School Dist.*, 219 P.3d 1276, 1281 (Nev. 2009) (internal quotations omitted). Where a SLAPP lawsuit is filed, the defendant may bring a special motion to dismiss. NRS § 41.660(1). The movant must make a "threshold showing that the lawsuit is based on good faith communications made in furtherance of the right to petition the government." *John*, 219 P.3d at 1282 (internal quotations omitted). The movant can do so by establishing that its communication falls within one of four specific categories of protected speech. *See* NRS § 41.637.

Here, Defendants rely on the third form listed at NRS § 41.637(3), which concerns a "[w]ritten or oral statement made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law." (*See* ECF No. 137 at 6-7.) NRS § 41.637(3). In particular, Defendants argue that Plaintiffs' claims—which revolve around Defendants' takeover of Metalast's assets—arise out of Defendants' petitioning activities in the Receivership Action. (ECF No. 137 at 8-9.) Plaintiffs counter that their claims arise out of "harms suffered by Plaintiffs . . . as a result of [Defendants'] conduct *prior* to the Receivership Action." (ECF No. 147 at 4-5 (emphasis added); *see also id.* at 5 ("[T]he Complaint is based on conduct wholly separate from the filing of the Receivership Action itself. . .").) Plaintiffs' argument is not persuasive, but the Court will still deny the Anti-SLAPP Motion.

Defendants have not met the threshold showing that the communications at issue here were made in good faith. Plaintiffs allege that, prior to the Receivership Action, Defendants misrepresented Chubb and Proctor's relationship with the Meilings and that the Meilings would provide funding to Metalast. (ECF No. 1 at 10-11.) As misrepresentations, these statements do not constitute "good faith communications" under the anti-SLAPP statute. *See* NRS § 41.637 (defining "good faith communication" as communication that "is truthful or is made without knowledge of its falsehood"); *see also Smith v. Craig*, Case No. 2:19-cv-824-GMN-EJY, 2020 WL 1065715, at *6 (D. Nev. Mar. 4, 2020) (dismissing anti-SLAPP motion because defendants allegedly made statements "'with actual knowledge of their falsity'").

4

Moreover, the alleged communications involved issues unrelated to the Receivership Action. Plaintiffs argue—and Defendants do not dispute—that the "*only* issue in the Receivership Action was the apparent solvency of [Metalast]." (ECF No. 145 at 16.) The State Court "*did not* make any findings of fact regarding the actions and omissions of [Defendants] *prior to* the date that the Receivership Action commenced." (*Id.*) See NRS § 41.637(3). Accordingly, the Court denies the Anti-SLAPP Motion.

## IV.  MOTIONS TO DISMISS

### A.  Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555.) "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted). And it must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *See id.* at 678. Second, a district court must consider whether the factual allegations in the complaint

allege a plausible claim for relief. *See id.* at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). This is insufficient. When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

**B.  Discussion**

Plaintiffs clarify that they only seek relief for Defendants' misconduct prior to the Receivership Action (ECF No. 147 at 4-5), therefore the Court will not address any misconduct that allegedly occurred after that action commenced.

As a preliminary matter, the Court will dismiss any claims predicated on Defendants' misrepresentation that Chubb was the Meilings' legal counsel (ECF No. 1 at 10-11). Plaintiffs contradict themselves by alleging that the "Fraudulent Scheme involved MEILING DEFENDANTS, *along with their legal counsel* Defendant JANET CHUBB," and that Chubb assisted the Meilings in filing a petition in State Court. (*Id.* at 10-11 (emphasis added).) Plaintiffs have pled these allegations out of court with fatal contradictions. *See Hill v. Wells Fargo Bank, N.A.*, Case No. 2:18-cv-1350-MMD-BNW, 2019 WL 5395439, at *4 (D. Nev. Oct. 21, 2019) (citing to *Weisbuch v. Cty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997)).

The two remaining misrepresentations concern Defendants' promise to provide additional funding to Metalast and their misrepresentation that Proctor was the Meilings' accountant. (ECF No. 1 at 15-17.) Defendants argue that the litigation privilege bars all claims predicated on these protected statements. (*See* ECF No. 134 at 29; *see also* ECF No. 138; ECF No. 140 at 7-9.) The Court agrees.

6

"The litigation privilege immunizes from civil liability communicative acts occurring in the course of judicial proceedings, even if those acts would otherwise be tortious." *Greenberg Traurig v. Frias Holding Co.*, 331 P.3d 901, 902 (Nev. 2014); *see also Bullivant Houser Bailey PC v. Eighth Judicial Dist. Court of State ex rel. Cty. of Clark*, 381 P.3d 597 (Nev. 2012) (citations and internal quotes omitted) (holding that the privilege bars "*any* civil litigation" and "all claims based" on communications protected by the privilege). "The scope of the absolute privilege is quite broad," and "courts should apply the absolute privilege liberally, resolving any doubt in favor of its relevancy or pertinency." *Fink v. Oshins*, 49 P.3d 640, 644 (Nev. 2002).[4]

As an initial matter, Plaintiffs argue that there is no supporting authority for applying the privilege here to protect Defendants "from liability for fraud, conspiracy, or covert and surreptitious actions." (ECF No. 145 at 21; ECF No. 146 at 12.)[5] To the contrary, litigation privilege is absolute and can extend to "statements made with knowledge of falsity and malice." *Blaurock v. Mattice Law Offices*, Case No. 64494, 2015 WL 3540903, at *1 (Nev. App. Ct. 2015).[6] Courts have also dismissed "all claims based" on communications

---

[4] The "policy underlying the privileges is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements." *Spitzmesser v. Tate Snyder Kimsey Architects, LTD.*, Case No. 2:10-cv-1700-KJD, 2011 WL 2552606, at *5 (D. Nev. June 27, 2011) (quoting *Circus Circus Hotels, Inc. v. Witherspoon*, 657 P.2d 101, 104 (1983)); *see also Hampe v. Foote*, 47 P.3d 438, 440 (Nev. 2002), *abrogated on other grounds by Buzz Stew, LLC v. City of North Las Vegas*, 181 P.3d 670 (Nev. 2008) ("An absolute privilege is an immunity, which protects against even the threat that a court or jury will inquire into a communication.").

[5] Plaintiffs appear to argue that litigation privilege does not apply to fraudulent conduct that occurred prior to the Receivership Action, based on United States Magistrate Judge Valerie Cooke's order in this case. (ECF No. 145 at 21 (citing to ECF No. 65 at 6); ECF No. 146 at 12 (same).) Not only is this position legally incorrect, but Judge Cooke's analysis is irrelevant here because she was discussing whether Proctor was entitled to quasi-judicial immunity based on his status as the receiver. (*See* ECF No. 65 at 6.)

[6] In response to Chubb's MTD (ECF No. 140), Plaintiffs argue that their allegations against Chubb "are not tied to communications or statements that she made . . ., but rather actions and omissions in which she engaged" in furtherance of the fraudulent scheme. (ECF No. 146 at 13.) The Court is puzzled as to what other "actions" Plaintiffs are referring to other than Chubb's statements. Regardless, Chubb correctly points out that litigation privilege applies to communicative acts—it is not limited to statements. (*See* ECF No. 153 *(fn. cont…)*

protected by the privilege. *Bullivant*, 381 P.3d 597; *see also Bailey v. City Attorney's Office of N. Las Vegas*, Case No. 2:13-cv-343-JAD-CWH, 2015 WL 4506179, at *3 (D. Nev. July 23, 2015) (listing cases where litigation privilege barred claims for breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, joint venture, and civil conspiracy).

Plaintiffs essentially allege that Defendants engaged in communicative acts in contemplation of the Receivership Action. (ECF No. 154 at 11; ECF No. 134 at 29.) Litigation "privilege applies to communications made by either an attorney or a nonattorney that are related to ongoing litigation or future litigation contemplated in good faith." *See Jacobs v. Adelson*, 325 P.3d 1282, 1285 (Nev. 2014). But the privilege will not apply to statements made to "those without direct involvement in the judicial proceeding" unless "the recipients of the communication [are] significantly interested" or have a "legal or financial interest in the underlying litigation." *Id.* at 1287 (citation omitted). Moreover, determining a recipient's interest is a "'case-specific, fact-intensive inquiry' that must focus on and balance the underlying principles of the privilege." *Id.* (same). Litigation privilege clearly applies to the communicative acts alleged here.

First, Defendants were planning to file the Receivership Action when they purportedly feigned negotiations and, in fact, used information obtained during negotiations by filing it in State Court. (ECF No. 45 at 3-4; *see also id.* at 4 (arguing that Proctor "was already seeking to be appointed receiver in the state court action" when he lied about being the Meilings' accountant).) Second, misrepresentations about funding and Proctor's relationship with the Meilings clearly relate to issues in the Receivership Action, i.e. whether Metalast is solvent and, if not, who should serve as its receiver. Third, litigation

---

at 4.) *See Bullivant*, 381 P.3d 597 (emphasis added) ("[T]here is 'no reason to distinguish between communications made during the litigation process and *conduct* occurring during the litigation process.'"). Furthermore, omissions can be deemed communicative acts. *See Las Vegas Sands Corp. v. First Cagayan Leisure & Resort Corp.*, Case No. 2:14-cv-424-JCM-NJK, 2016 WL 4134523, at *2 (D. Nev. Aug. 2, 2016) (applying litigation privilege to omissions deemed as communicative acts).

privilege applies to communicative acts made to both Metalast, a party in the Receivership Action, and Plaintiffs who, as Metalast investors, claim they had legal and financial interests in the action.[7] (*See* ECF No. 1 at 11.) *See Jacobs,* 325 P.3d at 1287. Finally, it is noteworthy that Plaintiffs are essentially suing Defendants for participating in the Receivership Action because: (1) Plaintiff's sole injury—Defendants' takeover of Metalast and its assets—stems from the Receivership Action; and (2) Defendants allegedly caused the injury when they used fraudulently-obtained information to file in the Receivership Action—information that Plaintiffs do not dispute are accurate. (*See* ECF No. 1 at 10-23.)[8] Therefore, applying litigation privilege here would serve the doctrine's underlying policy of "promot[ing] the truth finding process in a judicial proceeding" and "lessen[ing] the chilling effect on those who seek to utilize the judicial process to seek relief." *See Jacobs*, 325 P.3d at 1286-87 (citations omitted).

In sum, the Court finds that Plaintiffs' claims are barred by litigation privilege. *See Fink*, 49 P.3d at 644 (affirming district court's decision to resolve any doubts in favor of broadly applying litigation privilege to statements made prior to judicial proceedings); *Bullivant*, 381 P.3d 597 (applying litigation privilege to attorney's demand letter to adversarial party "feigning ignorance of the 60-month closing date" because the statement was made in contemplation and relation to litigation). Accordingly, the Court will grant the MTDs.[9]

---

[7]While the Complaint is ambiguous as to who the misrepresentations were directed at, Plaintiffs indicate in their responses to the MTDs that Defendants made misrepresentations to Metalast's executives, which Plaintiffs later discovered. (*See* ECF No. 145 at 5; ECF No. 146 at 5.)

[8]Although Plaintiffs insist that the Receivership Action is incidental to their claims (ECF No. 147 at 5), they fail to coherently articulate how Defendants can wrongfully convert Metalast's assets without the Receivership Action.

[9]A court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow (fn. cont…)*

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendants' Special Motion to Dismiss Under NRS § 41.660 and for Attorneys' Fees (ECF No. 137) is denied.

It is further ordered that Defendants' motions to dismiss (ECF Nos. 134, 140) are granted.

It is further ordered that the Clerk of Court enter judgment in accordance with this order and close this case.

DATED THIS 21st day of July 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

---

*Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Having reviewed the Complaint and parties' briefs, the Court also finds that Plaintiffs cannot cure the deficiencies in their Complaint. (*See* ECF No. 1 at 10-23; ECF No. 45 at 3-4; ECF No. 145 at 5; EF No. 146 at 5.)

10